IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ADAM JOE YOUNG, )
)
      **Plaintiff,** )
) Civil Action No. 2:13-00070
v. ) Judge Nixon / Knowles
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
      **Defendant.** )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 19. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

### I. INTRODUCTION

Plaintiff completed his application for Supplemental Security Income ("SSI") on October

1

13, 2010, alleging that he had been disabled since October 8, 1984, due to diabetes, asthma, poor circulation, heart and weight problems, fluid build-up, cholesterol problems, knee problems, and a blockage in an artery in his neck. *See, e.g.,* Docket No. 15, Attachment ("TR"), pp. 113, 149. Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 62). Plaintiff subsequently requested (TR 71) and received (TR 88) a hearing. Plaintiff's hearing was conducted on May 22, 2012, by Administrative Law Judge ("ALJ") Robert L. Erwin. TR 34. Plaintiff and Vocational Expert, Julian Nadolsky, appeared and testified. *Id.*.

On June 27, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 19-29. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since October 13, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: morbid obesity, diabetes mellitus II, asthma, hypertension, enlarged heart, and knee, leg, hip, and back pain (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently with no more than occasional climbing, stooping, bending, crouching, crawling, or kneeling. He can sit six hours and stand or walk for at least two hours in an eight-hour workday. He should avoid exposure to dust, fumes, smoke, chemicals, noxious gases, temperature extremes, or humidity.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on October 8, 1984 and was 26 years old, which is defined as a "younger individual" on the date the application was filed (20 CFR 416.963).

7. The claimant has a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 13, 2010, the date the application was filed (20 CFR 416.920(g)).

TR 24-29.

Plaintiff timely filed a request for review of the hearing decision. TR 17. On July 24, 2013, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

>(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
>(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
>(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

> "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) "rejecting" Plaintiff's complaints of disabling pain and finding his testimony not credible, and (2) insufficiently considering and addressing Plaintiff's obesity in relation to his other impairments. Docket No. 20 at 19. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

### 1. Credibility of Plaintiff's Subjective Complaints of Pain

Plaintiff contends that the ALJ improperly rejected his complaints of pain. Docket No. 20 at 20. Specifically, Plaintiff argues that he does have objective conditions that cause his pain and he asserts that the ALJ should not have discounted his credibility based on his lack of treatment because he properly explained that any lack of treatment was due to a lack of funds and an inability to pay for treatment. *Id.* at 20-22.

Defendant responds that the ALJ properly analyzed, and correctly found, that Plaintiff's complaints of pain were not fully credible. Docket No. 21 at 8-11. Defendant argues that the ALJ appropriately noted that Plaintiff's medical records failed to document any abnormality which could reasonably be expected to result in the degree of limitations alleged, and also noted that Plaintiff's medical treatment had been conservative in nature. *Id.*, *referencing* TR 26-27. Defendant contends that the objective medical findings, specifically the assessments of Dr. Smith and Dr. Johnson, support the ALJ's finding that Plaintiff's complaints of pain were not fully credible. *Id.* at 10. As for Plaintiff's allegations of anxiety, Defendant argues that the ALJ correctly discussed that Plaintiff had "no record of ongoing treatment for mental health" except for one visit to Volunteer Behavioral Health Care System, and one May 2012 visit to Satellite Medical-Cookeville that noted no depression, anxiety, or agitation. *Id.*, *citing* TR 25. Finally, Defendant asserts that Plaintiff's reported daily activities further undermine his credibility. *Id.* at 10-11.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged

8

> pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

9

In the instant case, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible to the extent that they differed from the determined residual functional capacity assessment. TR 26. In making this finding, the ALJ discussed Plaintiff's testimony regarding his subjective complaints and daily activities as follows:

> At the hearing, [Plaintiff] testified he is single and lives alone in a camper on his stepfather's property, but stays at his mother's house if it gets really cold. He stated he is 5'6" and weighs 420 pounds and confirmed that he has been overweight most of his life. He has a valid drivers' license with no restrictions, yet has not driven in years because he has no vehicle. He asserted he has not been able to work because he cannot stand for long periods of time and if he sits for long periods of time his hips start hurting. He feels a burning sensation in his feet all the time and he has hip and back pain. He has not had any treatment until recently as he has had no money. He has been given cream to help his testosterone deficiency. He takes Metformin for diabetes and uses an inhaler for his asthma. He cited he checks his sugar level once or twice a week, when he feels it is getting high. He has an enlarged hear[t] and leakage, but receives no treatment. He had insurance until he was 23 and was going to a doctor. He had lost over one hundred pounds, but quit going due to no insurance and gained all the weight back. He has insomnia and does not get a full night's sleep. He plays the guitar and likes fishing, 'but can't do it a whole lot anymore.' He receives food stamps and his mother usually does his shopping and laundry. He visits his father and used to visit his little brother before he joined the Army. The claimant reported he used to walk every morning before his legs started hurting so bad. He has difficulty putting on and taking off his shoes and socks. He spends the day at his mother's house helping look after four children ages five to ten that his mother adopted and his thirteen-year old sister. He confirmed that he could sit twenty to thirty minutes, stand five to ten minutes, and walk seventy-five yards. He has no idea how much weight he could lift and has not been assigned any lifting restrictions. He has difficulty playing the guitar because his hands ache and go numb. He has difficulty with his grip and has to get assistance opening a jar. He can prepare

meals in a microwave, but cannot stand over a stove. He has chest pains and gets out of breath walking from the bathroom to the kitchen. He reads a couple of hours a day and used to read more, but his 'mind just like can't go for more than an hour a day.' When he has bad back, hip and leg pain, he will lie down for about one hour. He sometimes experiences pain with urination and has to go to the bathroom every hour. He is anxious when he is around people and gets 'panicky feeling when I was around crowds or anything.' He was not able to go back for further mental health treatment because he could not afford it. He has been prescribed medication by the health department and his blood pressure medication keeps his hypertension under control.

TR 24-25.

The ALJ also discussed Plaintiff's medical records as follows:

> Morbid obesity, asthma, diabetes mellitus II, pulmonary valve insufficiency with tricuspid regurgitation, hypogonadism, hyperlipidemia, and tachycardia were assessed by Jackson County Health Department staff. He was encouraged to make dietary changes, exercise, and "cut out mellow yellow" in October 2010. His asthma was "stable" in July 2011 and he was counseled to exercise four to five times a day for one to five minutes at a time, eat a low carbohydrate diet, and attend weight reduction classes (Exhibits 7F, 12F, and 13F)
>
> Mr. Young was consultatively examined by Dr. Johnson in December 2010. He noted the claimant was 67 inches tall and weighed 450 pounds. The claimant stated he had "been primarily working on the family farm most of his life" and "was never limited in his physical ability due to his obesity." He had full range of motion in his neck, shoulders, elbows, wrists, hips, knees, and ankles bilaterally and straight leg raise was negative. Spinal range of motion was 70 degrees flexion and 15 degrees extension and right and left flexion. Gait and station were unremarkable and he could squat and rise half the distance and heel-toe walk. Dexterity was equal and intact, Romberg's was negative, and deep tendon reflexes and cranial nerves were intact. Lung fields were clear to auscultation with no wheezing, rhonchi, or rales noted. His heart had regular rate and rhythm with no murmurs or gallops noted. The examiner concluded that the claimant could lift twenty pounds occasionally, ten pounds frequently, stand and walk for at least two hours, and sit for about six hours of an eight-hour workday

>   (Exhibit 8F).
>
>   The claimant's records were reviewed by a State Agency physician in March 2011 who averred that he was capable of a range of light exertional activity (Exhibit 9F).
>
>   Medical records of Satellite Med-Cookeville indicated the claimant established care in March 2012. X-rays showed degenerative disc disease and lumbar scoliosis with loss of disc height at L4/L5 and L5/S1 and knee x-rays were normal. Mood and affect noted no depression, anxiety, or agitation. Cranial nerves were intact and gait and station were slow. He had no clubbing, cyanosis, petechiae, or nodes. Lung fields were clear to auscultation with no rales, rhonchi, or wheezes. Cardiovascularly, he had no murmur, rub, or gallop. The claimant reported being on no medication for his diabetes. In May 2012, the claimant was "advised on proper diet and exercise to promote weight loss" (Exhibit 15F).
>
>   Although the record notes an impression of anxiety during one office visit to Volunteer Behavioral Health Care System, there is no record of ongoing treatment for mental health. Specifically, he does not take any medications commonly prescribed for anxiety. There is no indication of supporting medical evidence that this condition caused disabling functional limitations. Therefore, the undersigned concludes that this impairment is non-severe (Exhibit 11F).

TR 25-26, *citing* 371-400, 412-37, 443-56.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, indicating that these factors were considered. TR 26-28. It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility

12

determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all of the objective and testimonial medical evidence, the ALJ ultimately determined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

TR 27.

The ALJ explained:

> The undersigned finds that the claimant's subjective complaints of disabling physical limitations are disproportionate to the objective clinical and diagnostic medical evidence. That is, clinical and diagnostic records fail to document any abnormality, which could reasonably be expected to result in the degree of limitations alleged. The claimant has not received the type of medical

13

treatment one would expect for a totally disabled individual. No treating or examining physician noted any significant abnormalities or assigned any restrictions. The claimant has been prescribed only conservative treatment with medication intermittently. At the consultative examination, Dr. Johnson noted the claimant had full range of motion in his neck, shoulders, elbows, wrists, hips, knees, and ankles bilaterally and straight leg raise was negative. Gait and station was unremarkable, dexterity was equal and intact, Romberg's was negative, and deep tendon reflexes and cranial nerves were intact. Lung fields were clear to auscultation with no wheezing, rhonchi, or rales noted. His heart had regular rate and rhythm with no murmurs or gallops noted. The examiner concluded that the claimant could lift twenty pounds occasionally, ten pounds frequently, stand and walk for at least two hours, and sit for about six hours of an eight-hour workday. The only remaining assessment is that of the State Agency physician who opined that the claimant was capable of a range of light exertional activity. Said finding is somewhat consistent with the objective and clinical medical evidence of record and claimant's hearing presentation. Although this consultant was non-examining, and therefore her opinions do not, as a general matter, deserve as much weight as those of examining or treating physicians, her opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). Furthermore, as experts in the Social Security disability programs, State Agency consultants are uniquely qualified and trained to articulate findings of fact about the nature and severity of a given claimant's impairments. The assessments of these consultants are based on a review of the complete case record, which provides more detailed and comprehensive information than what is generally available to the other sources of record. Said opinions of the consultative examiner and the State Agency physician are largely consistent with the objective and clinical evidence of record and have been afforded great weight. However, Dr. Parrish, the State Agency physician's assertion that the claimant could stand or walk for four hours have [*sic*] been afforded no weight (Exhibits 8F and 9F). A review of the claimant's work history shows that the claimant seldom worked even prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. The undersigned notes that a lack of motivation, reliability, and/or dependability does not necessarily flow from or suggest a disabling physical or psychological impairment (Exhibit 2D).

14

> Although the claimant has testified to daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.
>
> As for the opinion evidence, assessments of physical and mental functional capacity are not consistent with an inability to perform work activity. Objective findings are minimal despite the claimant's complaints. Absent more restrictive assessments from treating physicians and mental health providers, the undersigned adopts those conclusions reached by the consultative physical examiner and the State Agency physician.
>
> In sum, the above residual functional capacity is based on objective medical evidence. The evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the totality of the factors leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity finding in this case is justified. It is further supported by a careful review of the non-medical evidence in this case, by the undersigned's observations of and conversation with the claimant during the hearing in this case, and by the finding that the assertions of the claimant are not entirely credible. As the residual functional capacity reflects, the claimant's conditions fall far short of being disabling under disability laws.

TR 26-28, *citing* 122-130, 385-390, 391-400.

As can be seen above, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by

substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

**2. Effect of Plaintiff's Obesity**

Plaintiff argues that the ALJ "failed to discuss" his obesity and its effects on his other impairments, particularly with regard to its impact on his degenerative disc disease, scoliosis, and neuropathy. Docket No. 20 at 19. Plaintiff concedes that the ALJ mentioned his obesity, but argues that he did so in passing, and did not "give any analysis of obesity's impact on [Plaintiff's] functioning." *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's obesity. Docket No. 21 at 11. Defendant notes that the ALJ referenced Plaintiff's obesity diagnosis in his decision, asked Plaintiff about his obesity at the hearing, and accorded great weight to Dr. Johnson's opinion, which "specifically took into account Plaintiff's obesity." *Id.* at 11-12. Defendant additionally argues that "[P]laintiff's failure to continue to comply with prescribed medical treatment has further diminished his credibility in seeking disability benefits." *Id.* at 12.

The ALJ in the case at bar ultimately found that Plaintiff's morbid obesity was a severe impairment. TR 24. Plaintiff correctly asserts that SSR 02-1p provides that obesity may exacerbate other conditions and that adjudicators should consider its effects when evaluating disability. SSR 02-1p. Contrary to Plaintiff's argument that the ALJ only mentioned his obesity in passing, however, the ALJ's decision reflects that he was not only aware of Plaintiff's obesity, but, as demonstrated in the passages quoted in the statement of error discussed above, properly considered the objective and testimonial evidence regarding Plaintiff's obesity. *See* TR 24-27.

After discussing the objective and testimonial evidence recounted in the first statement of

16

error, the ALJ stated:

> The claimant has also been diagnosed with morbid obesity, weight of 450 pounds and a body mass index of 70. The undersigned has considered the impact obesity has at steps two through five of the sequential evaluation, singly and in combination with his other impairments. Consideration included determination of the extent and severity of the claimant's impairment-related limitations, consistent with Social Security Ruling 02-1p (Exhibit 8F).

TR 27, *citing* 385-90.

As can be seen in the ALJ's detailed discussion of the medical and testimonial evidence, the ALJ did not simply mention Plaintiff's obesity in passing. Rather, the ALJ reviewed the medical records concerning Plaintiff's obesity and its resultant effects, questioned Plaintiff about his obesity and its impact on his life and recounted that testimony, and properly considered Plaintiff's obesity. Accordingly, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge